UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CALVIN L. WALTON,

          Plaintiff,

v.                                      Case No. 2:20-CV-00427

KILOLO KIJAKAZI,[1]
**Acting Commissioner of the Social Security Administration,**

          Defendant.

## DECISION AND ORDER

**1. Introduction**

Plaintiff Calvin Walton alleges that he has been disabled since January 6, 2002. (ECF No. 18 at 2) (all citations reflect ECF pagination.) As the administrative law judge (ALJ) who most recently reviewed Walton's case said, Walton "has a long history with the Social Security Administration." (Tr. 4.) "He filed the applications at issue on June 19, 2003, with prior disability applications dating as far back as 1976." (Tr. 4.)

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

After Walton's most-recent applications were denied initially and upon reconsideration, a hearing was held before an ALJ on February 9, 2006. (Tr. 166.) The ALJ issued a decision dated February 26, 2007. (Tr. 210.) The file was then lost, and the Appeals Council remanded the matter for rehearing. (Tr. 317.) Another hearing was held before a different ALJ on December 15, 2009. (Tr. 142.) On January 27, 2010, the ALJ issued what was characterized as a partially favorable decision. (Tr. 227.) On October 7, 2010, the Appeals Council remanded the matter for a supplemental hearing. (Tr. 222.) The ALJ issued his decision on December 7, 2011, which was generally consistent with his prior decision. (Tr. 239.) The Appeals Council denied review on January 7, 2013. (Tr. 252.)

After Walton filed an action in federal court challenging the Commissioner's decision (Tr. 261; *Walton v. Colvin*, 13cv218 (E.D. Wis.)), the parties jointly requested remand (Tr. 263), which the court ordered (Tr. 264). The Appeals Council then remanded the matter to a third ALJ (Tr. 317), and a supplemental hearing was held on September 25, 2014 (Tr. 404). The ALJ issued his decision on January 23, 2015. (Tr. 270.) Walton again filed an action in federal court challenging the Commissioner's decision, and this court remanded the case for further proceedings. (Tr. 292; *Walton v. Colvin*, 15cv372 (E.D. Wis.)). The Appeals Council then remanded the matter to an ALJ (Tr. 300), and a supplemental hearing was held on July 10, 2019 (Tr. 4). On November 21, 2019, yet another ALJ issued a written decision, concluding that Walton was not disabled. (Tr. 19.) Because the Appeals Council did not assume jurisdiction, the ALJ's decision is the final decision of the

Commissioner. 20 C.F.R. § 404.984. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 5, 8), and the matter is ready for resolution.

Relevant to his present claim for disability insurance benefits, the question is whether Walton was disabled prior to December 31, 2004, his date last insured. (Tr. 4.) Although Walton alleges he was disabled as of January 6, 2002, based upon a May 20, 2002 decision denying a November 29, 2001 application for benefits, the earliest Walton could be found disabled is May 21, 2002. (Tr. 273) ("That denial, in conjunction with the implications of the doctrine of *res judicata* is no doubt the reason why claimant is now alleging disability only since January 6, 2002, although even here, *res judicata* would preclude a finding of disability any earlier than May 21, 2002 or one day after that earlier application was denied."). Thus, the focus of the court's current review is the period between May 21, 2002, and December 31, 2004.

## 2. The ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Walton "has not engaged in substantial gainful activity since January 6, 2002." (Tr. 7.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments

that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Walton has the following severe impairments: "posttraumatic stress disorder (PTSD), depressive disorder, personality disorder with narcissistic and borderline traits, and polysubstance abuse." (Tr. 7.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that Walton's "impairments, including polysubstance abuse, met or medically equaled a listing impairment." (Tr. 7.)

Having reached that conclusion, the ALJ typically would end the sequential evaluation process and conclude that Walton is disabled. However, if it is found that there is medical evidence of a substance abuse disorder, the ALJ must determine if the substance abuse disorder is a contributing factor material to the determination of disability. *See* 20 C.F.R. § 404.1535(a). "An individual shall not be considered to be

4

disabled for purposes of [the Social Security Act] if alcoholism or drug addiction would … be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Substance abuse disorders are "material to the determination of disability if the claimant would not meet [the Commissioner's] definition of disability if [she] were not using drugs or alcohol." SSR 13-2p. "When an applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for the administrative law judge is whether, were the applicant not a substance abuser, she would still be disabled." *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) (internal citations omitted).

The ALJ concluded that, if Walton stopped the substance use, his "remaining impairments would cause more than a minimal impact on [his] ability to perform basic work activities; therefore, the claimant would continue to have severe impairments." (Tr. 9.) However, the ALJ concluded that he "would not have an impairment or combination of impairments that meets or medically equals any of impairments in [the listings]." (Tr. 9.) Having found that Walton's impairments would not satisfy any of the impairments listed in the listings if he stopped substance abuse, the ALJ proceeded to the next step in the sequential evaluation process.

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding, the ALJ must consider all of the

claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that

> If [Walton] stopped the substance use, [he] would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can perform simple and routine tasks that involve up to three steps; can maintain attention and concentration for two-hour segments; cannot perform fast-paced work, such as assembly-line work; can make simple work-related decisions; can tolerate occasional changes in a routine work setting; can occasionally interact with the public; can interact with smaller groups of coworkers on a routine basis, where a smaller group is defined as six to ten individuals, but must avoid routine interaction with larger groups of coworkers; and can frequently interact with supervisors.

(Tr. 11.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that Walton would be unable to perform his past relevant work as a semi-skilled cook's helper. (Tr. 17.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step, relying on the testimony of a vocational expert (VE), the ALJ concluded that there were jobs that Walton could perform, including production worker (Dictionary of Occupational Titles

(DOT) Number 732.684-018); unskilled cook's helper (DOT Number 317.687-010); and dishwasher (DOT Number 318.687-010). (Tr. 18.) Therefore, Walton was not disabled. (Tr. 19.)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## 4. Analysis

Walton argues that the ALJ erred in his evaluation of Walton's subjective symptoms, in weighing the opinion of psychologist Jeffrey Andert, Ph.D., and in not including an off-task provision in his RFC finding.

### 4.1 Walton's Subjective Symptoms

When Walton originally filed this application in 2003, SSR 96-7p governed the evaluation of a claimant's subjective symptoms. However, in March 2016 SSR 16-3p superseded SSR 96-7p. Because SSR 16-3p was a clarification of existing rules rather than a change in the law, 16-3p applies to this case. *See Turner v. Colvin*, No. 14 CV 02237, 2016 WL 3088134, at *8 (N.D. Ill., June 2, 2016) (citing *Pope v. Shalala*, 998 F.2d 473, 482-83 (7th Cir. 1993)). Under SSR 16-3p, an ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work related activities...." SSR 16-3p. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be

clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

The ALJ must also consider, to the extent they are relevant, the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

The ALJ stated:

If the claimant stopped the substance abuse, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained below.

(Tr. 12.)

Walton argues that the ALJ failed to explain which of Walton's symptoms he found consistent or inconsistent with the objective medical evidence and that he otherwise only "cursorily addressed" Walton's symptoms. (*See, e.g.*, ECF No. 18 at 13, 14, 19.) Walton also argues that the ALJ erred in ignoring non-medical sources, like the Department of

Veterans Affairs' finding that Walton was one hundred percent disabled, in his evaluation of Walton's subjective symptoms. (*Id.* at 17.)

The Commissioner responds that the ALJ's assessment is supported by "substantial evidence" and that he sufficiently explained his findings "to provide a fair sense of how [he] assessed [Walton's] testimony and statements." (ECF No. 22 at 6.) She contends that the ALJ did not ignore Walton's subjective symptoms and that Walton is impermissibly asking "the [c]ourt to reweigh the evidence and substitute its judgment for the ALJ." (*Id.* at 10.)

The Commissioner is correct that the ALJ did not ignore Walton's subjective symptoms. Indeed, he mentioned Walton's subjective symptoms at the beginning of several paragraphs. He noted, for example, that Walton complained of "difficulty sleeping, nightmares, and feeling anxious" (Tr. 13) and that "[h]e reported he was not sleeping or eating well, felt fatigued, and had dreams related to military service." (Tr. 14). But it is not enough for an ALJ to mention a claimant's symptoms. Rather, an ALJ must provide "specific reasons for the weight given to the individual's symptoms." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *see also* SSR 16-3p. He must explain his "decision to credit some evidence over the contrary evidence, such that [a reviewing court] could understand [his] logical bridge between the evidence and the conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014). Having an ALJ provide this explanation takes on additional importance when a claimant is suffering from mental illness. *Cf. Meuser v.*

*Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). That was one purpose of this court's prior remand, to have the ALJ better explain his evaluation of Walton's symptoms. (*See, e.g.*, Tr. 298) ("On remand, the ALJ must reassess the severity of Walton's symptoms in accordance with the Administration's new ruling, SSR 16-3p.").

Walton was in a residential treatment program from August 2002 to October 2002; incarcerated but receiving some treatment from the fall of 2002 to May 2003; and in outpatient treatment for the rest of 2003. (Tr. 13.) Several treatment notes suggest that he had some success in treatment. For instance, after a month in the residential treatment program, Walton "appear[ed] to be doing well in his overall treatment program." (Tr. 1235.) And at a June 2003 outpatient treatment session he was reportedly making "moderate to significant progress." (Tr. 1183.) These notes, and several others like them, seem to support the ALJ's conclusion that Walton "exhibited fairly good mental function while maintaining sobriety." (Tr. 14.)

However, the ALJ did not explain why he credited these positive treatment notes over Walton's symptoms that seemingly persisted despite his sobriety, including trouble "controlling his violent behavior," nightmares related to military service, and feelings of anxiety, distantness, and heightened alertness. (Tr. 1207; *see also* Tr. 1200, 1148-49.) The ALJ provided only "snapshots" of Walton's overall condition, taken while he was enrolled in treatment and on what consequently may have been his "better days." *See Meuser*, 838 F.3d at 912 ("An ALJ cannot recite only the evidence that supports his

11
Case 2:20-cv-00427-WED   Filed 11/03/21   Page 11 of 19   Document 24

conclusion while ignoring contrary evidence. This 'cherry-picking' is especially problematic where mental illness is at issue, for 'a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [his] overall condition.'") (internal citations omitted).

The ALJ addressed the relationship between Walton's PTSD and other mental impairments and his substance use. (Tr. 9.) But he erred in addressing that relationship only during the time Walton was in treatment for his substance abuse. Walton's PTSD and other mental impairments may have improved while in treatment, but that does not mean his impairments themselves are not disabling. *See Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) ("[T]he fact that substance abuse aggravated [the claimant's] mental illness does not prove that the mental illness itself is not disabling.") (internal citations omitted). Indeed, without more explanation, it is unclear how the ALJ determined that they weren't.

On that point, that Walton experienced some improvement in his mental functioning when sober does not suggest the absence of a disability. *Herron v. Colvin*, No. 14-CV-56, 2014 WL 6607179, at * 7 (E.D. Wis. Nov. 19, 2014). The improvement took place while he was in treatment. *Cf. Harlin v. Astrue*, 424 F. App'x 564, 568 (7th Cir. 2011) ("Further, the evidence that the ALJ chose instead to rely on—discharge summaries showing [the claimant's] improved condition at the time of discharge—was hardly remarkable because one would expect a patient with severe mental impairments to

improve upon a course of treatment in a structured hospital environment.") (internal citations omitted). In fact, the ALJ all but ignored the symptoms Walton reported while sober but out of treatment, including "feeling more depressed," "not sleeping or eating well," and having "dreams related to military service." (Tr. 14.)

In all, the ALJ's decision to discredit Walton's symptoms lacks explanation—which was the purpose of the remand. (Tr. 298); *see Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) ("We will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong' meaning it lacks explanation or support." (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014))). On further remand, the ALJ must explain why he gave certain evidence more weight than other evidence and how those decisions informed his overall conclusion, paying careful attention to whether Walton has shown that he would be disabled even in the absence of his substance abuse.

**4.2 Dr. Jeffrey Andert's Opinion**

Walton also argues that the ALJ erred in giving significant weight to Dr. Andert's opinion without "grappl[ing] with evidence favorable to Mr. Walton that undermined that opinion." (ECF No. 18 at 20.) The Commissioner responds that, even though the ALJ gave significant weight to Dr. Andert's opinion, he also considered evidence favorable to Mr. Walton and incorporated that evidence in his decision-making. (ECF No. 22 at 17.)

The ALJ offered several reasons for giving significant weight to Dr. Andert's opinion, including that

> [t]he medical evidence supports Dr. Andert's assessment of moderate limitations for the paragraph B criteria if the claimant stopped the substance use. The medical evidence indicated that while receiving treatment and remaining sober, the claimant managed his anger and emotions better, exhibited a positive attitude, and was progressing towards his treatment goals. He still exhibited various abnormalities (such as depressed mood, poor judgment, and partial insight) but also a full affect, good hygiene, and normal thoughts.

(Tr. 15.) The ALJ also explained how "the medical evidence supports Dr. Andert's assessments about work-related limitations" (Tr. 15), and why he discounted the opinions of two other medical experts, explaining that neither was supported by the record. (Tr. 16.) He also credited some (but not all) of "[Walton's] allegations" by "not[ing] that a greater restriction for interaction with supervisors was warranted." (ECF No. 22 at 18; Tr. 15-16.)

An ALJ is not required to "provide a complete written evaluation of every piece of testimony and evidence." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). But, as explained above, an ALJ is required to explain his decision to weigh some evidence over contrary evidence. *Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014). The ALJ erred in not explaining why he credited Dr. Andert's opinion over evidence that Walton struggled with nightmares, controlling his anger, and maintaining concentration even while sober. (*See, e.g.*, Tr. 1148-49, 1200, 1207.) Similar to what was instructed above, the ALJ on remand must explain why he gave Dr. Andert's opinion more weight than contrary evidence, including Walton's subjective symptoms, and explain how those decisions informed his overall conclusion.

14
Case 2:20-cv-00427-WED    Filed 11/03/21    Page 14 of 19    Document 24

**4.3 Lack of an Off-Task Provision**

Walton argues that the ALJ erred in not including an off-task provision in his RFC finding because there was evidence that Walton had "difficulty staying on task," "problems with persistence and pace," and "difficulty maintaining focus." (ECF No. 18 at 22.) The Commissioner responds that the ALJ did not err in making his RFC finding because he found no opinion evidence that Walton would need to be off-task and was under no obligation to otherwise include an off-task limitation. (ECF No. 22 at 22-23.)

While Walton was receiving inpatient treatment, a provider noted that he had poor attention and concentration. (Tr. 1257.) He also self-reported that he had difficulty concentrating and paying attention on several separate occasions. (*See, e.g.*, Tr. 40, 1230, 1207.) In addition, he described having difficulty with social interaction (*see e.g.*, Tr. 41, 46) and testified to needing to isolate himself often (*see e.g.*, Tr. 41, 49). The RFC contained "additional limitations based on the overall record and in consideration of the claimant's subjective complaints." (Tr. 15.) The ALJ explained, for example, that "the residual functional capacity reduces the claimant to frequent interaction with supervisors based on the claimant's testimony about anger problems and social isolation." (Tr. 16.)

That the ALJ asked the VE about off-task time "signaled [his] acknowledgment of [Walton's] potential limitations with respect to being off task." *See Jensen v. Saul*, No. 19-CV-1714, 2021 WL 199292, at *4 (E.D. Wis. Jan. 20, 2021). The record shows that Walton has limitations in maintaining concentration, persistence, or pace. The ALJ concluded that

Walton had a moderate limitation "with regard to concentrating, persisting, or maintain[ing] pace." (Tr. 10.) But the ALJ did not reference that limitation in the hypotheticals he posed to the VE. Rather, he asked whether adding the "the following limitation to [the first three hypotheticals]: can maintain attention and concentration for two-hour segments" would change the VE's testimony "for any of those first three hypotheticals?" (Tr. 85.) And then plainly, "what is the tolerance for time off-task in a workday, outside of regular breaks?" (Tr. 84.) "Hypothetical questions posed to vocational experts ordinarily must include all limitations supported by medical evidence in the record." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (internal citations omitted). A moderate limitation "with regard to concentrating, persisting, or maintaining pace" is supported by the record, but it is unclear whether the same can be said of the "two-hour segments" limitation.

This is not a case where "the VE independently learned of [the claimant's] limitations (through other questioning at the hearing or outside review of the medical records, for example) and presumably accounted for them." *Steele* 290 F.3d at 942 (citing *Ragsdale v. Shalala*, 53 F.3d 816, 818-21 (7th Cir. 1995)). The VE did not review the record:

> ALJ: All right. And have you reviewed the exhibits from the claimant's file, made available to you before the hearing, so you could familiarize yourself with the claimant's vocational background?
>
> VE: I was not able to open the file in ERE, and I did not receive a paper copy.

(Tr. 81.) And testimony about Walton's limitations with regard to concentrating, persisting, or maintaining pace takes up no more than two pages of the transcript. (Tr. 38-40.) That may have informed the VE enough to account for limitations in her responses, but it may not have, given that the record would have provided her with a more contemporaneous (and likely more accurate) account of Walton's limitations from May 2002 through December 2004. On remand, the ALJ should be sure to elicit complete testimony from the VE. *Steele*, 290 F.3d at 942.

Even if the ALJ does not conclude on remand that Walton's difficulties with concentrating and paying attention warrant an off task provision, the ALJ must otherwise address those difficulties in his RFC finding. For example, the ALJ did not explain how the RFC's "two-hour segments" limitation addresses those difficulties. (Tr. 15-16.) Indeed, as Walton contends,

> the ALJ provided no supported rationale for this finding and did not reconcile it with record evidence of difficulty staying on task including Mr. Walton's distractibility due to flashbacks, his problems with persistence and pace due to isolative behavior, his difficulty maintaining focus, and his fatigue due to being tired after lack of sleep when having nightmares.

(ECF No. 18 at 22) (internal citations omitted.) Without that explanation, it is unclear whether the "two-hour segments" limitation is supported by substantial evidence. *See, e.g., Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (concluding that remand was appropriate where an RFC finding was not supported by substantial evidence).

## 5. Conclusion

Walton argues that he is entitled to a direct award of benefits. (ECF at No. 18 at 22-25.) A direct award of benefits is only appropriate when all factual issues have been resolved, *see Israel v. Colvin*, 840 F.3d 432, 441-42 (7th Cir. 2016), and the evidence is such that it "can yield but one supportable conclusion." *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020) (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)). Importantly, "obduracy is not a ground on which to award benefits; the evidence properly in the record must demonstrate disability." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 357 (7th Cir. 2005).

The court recognizes that it has been an exceptionally long process for Walton. And it is undoubtedly frustrating for him to have to suffer the repeated errors in the assessment of his claim. However, the evidence is not such "that it can yield but one supportable conclusion." On remand, the ALJ may again conclude that Walton was not disabled from May 2002 through December 2004. But in reaching that decision, the ALJ must explain why he weighed Dr. Andert's opinion and the evidence of Walton's purported success in treatment over other evidence, including Walton's subjective symptoms. Moreover, that explanation must determine whether the improvement in Walton's symptoms experienced while in treatment for substance abuse is dispositive of his disability status. Finally, the ALJ's RFC determination must account for his moderate limitation in maintaining concentration, persistence, or pace.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 3rd day of November, 2021.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge